UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES A. WILLISON,

    Plaintiff,

v.                                                    Case No. 19-CV-1446

MICHAEL MEISNER, *et al.*,

    Defendants.

## DECISION AND ORDER SCREENING PLAINTIFF'S COMPLAINT

Plaintiff James A. Willison, a Wisconsin state inmate who is representing himself, filed this lawsuit under 42 U.S.C. § 1983 alleging that officials at Redgranite Correctional Institution violated his constitutional rights. Willison also filed a motion to proceed without prepaying the filing fee but then paid the filing fee in its entirety. This decision denies as moot Willison's motion to proceed without prepaying the filing fee, denies as moot his motion to screen, denies as moot his motion to dismiss, and screens his complaint.

I have jurisdiction to decide the motions and screen the complaint in light of Willison's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between Wisconsin Department of Justice and this court.

1. *Motion to Proceed Without Prepaying the Filing Fee*

When Willison filed his complaint, he also filed a motion asking for leave to proceed without prepaying the entire filing fee. He then went on to pay the filing fee in full. His motion is therefore moot.

2. *Screening of the Complaint*

   2.1    Federal Screening Standard

Federal law requires that I screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I will give a *pro se* plaintiff's

2

allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

2.2 Allegations in the Complaint

Redgranite Correctional Institution announced an emergency count around 12:30 p.m. on July 16, 2019. Right after count was cleared, a Redgranite staff member came to every inmate's cell and handed the inmate a memo from defendant Warden Michael Meisner which read, "Effective immediately, E Unit has been placed in complete lockdown for the purpose of conducting a search of the building and property." (Docket # 1 at 1.) The lockdown entailed having all meals served in the inmates' rooms; showers being offered once per day; staff offering ice and water to each room on a rotational basis; staff escorting out of room movement; the canceling of all visitation; and the suspension of all administrative rules, except for Chapter DOC 303.[1]

During the two-and-a-half days the unit was in lockdown, the heat index reached over 100 degrees. Willison was locked in a cell with another inmate with no air movement and nowhere to obtain cool air. The air system was not on, which made it hotter. He complained about the temperature, and an unknown female sergeant screamed at him to shut his "fucking door or [get] a ticket." (Docket # 1 at 7.) Other complaints were met with "shut up." (*Id.* at 8.) They received room temperature bottled water. When Willison questioned the memo, security staff told him that he would have to stay in his cell with the door closed and to ask an officer to use the bathroom, which he was told also entailed a strip search going in and a pat down search coming out. The searches also applied to showering.

---

[1] Chapter DOC 303 refers to the disciplinary chapter of the Department of Correction's administrative code. Wis. Admin. Code DOC Ch. 303.

3

Willison alleges he was strip searched between 30 and 50 times between July 16 and July 19, 2019. He alleges he suffered psychological pain and suffering as a result of the searches.

Willison has a swollen prostate, a side effect of which is that his bladder does not always fully empty and creates the sensation of needing to urinate all the time. He complained to a staff security supervisor about the problem, who told Willison he would look into it. When Willison followed up, the staff member said he would just have to deal with it. He continued to complain to staff about waiting to urinate. He had to wait three hours before being allowed to urinate (he does not say if this was a regular or one-time occurrence, but he does allege he complained multiple times about having to wait to urinate) and twice resorted to urinating in a peanut butter cup.

Willison complained to unknown captains and lieutenants, who threatened him with being sent to segregation.

2.3 Analysis

Willison's complaint focuses on the conditions of his confinement, including cell temperature and lack of access to the restroom, as well as being subjected to strip and pat down searches. All of these potential claims are analyzed under the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment.

To state a claim that his conditions of confinement violated the Eighth Amendment, Willison must demonstrate both: (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities" (the claim's objective prong) and (2) the defendant acted with deliberate indifference with respect to the conditions (the claim's

subjective prong). *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)).

With respect to access to the restroom, it is true that "[a]dequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities that must be afforded prisoners." *Jaros v. Ill. Dep't. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). But it also true that officials denying a prisoner access to a toilet for a brief period of time generally does not violate the Eighth Amendment. *See, e.g.*, *Thomas v. Cox*, No. 10–CV–997–GPM, 2011 WL 3205660, at *3 (S.D. Ill. July 27, 2011) (inmate failed to state Eighth Amendment claim where he experienced delays in bathroom access because he was required to share two toilets with 90–100 other men); *Clark v. Spey*, No. 01–C–9669, 2002 WL 31133198 at *2–3 (N.D.Ill.Sept.26, 2002) (inmate placed in cell overnight without functioning toilet failed to state Eighth Amendment claim). Willison does not allege a singular incident but rather two-and-a-half days of protracted wait times to use the restroom, resulting in him having urinate into an empty peanut butter container on more than occasion and causing him pain (related to his prostate condition). This is sufficient at screening to allege a sufficiently adverse condition. As for alleging deliberate indifference, Willison alleges he complained to "staff," a "white shirt," and "security staff supervisors" about the issues with extended waiting time to use the restroom. At screening, I will infer from his allegations that these unknown officials knew about the wait times and did not act. He has therefore pled enough to state a claim related to protracted wait times for using the bathroom over the course of two-and-a-half days.

Willison also complains that neither the air system nor any fans were on during the two-and-a-half-day lockdown despite outside temperatures reaching over 90 degrees. "There

5

is precedent for finding that, depending on ventilation concerns and length of time involved, a heat index over 90 degrees can pose an objectively serious threat to health and safety if ameliorative steps are not taken, such as providing fans and ice water." *Bentz v. Butler*, Case No. 14-cv-00996-NJR, 2015 WL 5009742, at *3 (N.D. Ill. Aug. 24, 2015) (citing *Gates v. Cook*, 376 F.3d 323, 334 (5th Cir, 2004); *White v. Monohan*, 326 Fed. Appx. 385, 387–88 (7th Cir.2009) (recognizing that excessive heat and poor ventilation fall under the ambit of the Eighth Amendment); *Sanders v. Sheahan*, 198 F.3d 626, 628–29 (7th Cir.1999) (reversing district court's dismissal of prisoner's complaint and holding that prisoner had stated a claim based on excessive heat and poor ventilation); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir.1997) ("[c]old temperatures need not imminently threaten inmates' health to violate the Eighth Amendment"); *Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir.1994) (holding inmate need not allege frostbite or hypothermia to establish that cold temperatures endangered inmate's health)). At screening, Willison's allegations that he was subjected to hot temperatures without air movement is sufficient to allege an adverse condition. He also says he complained to an "unknown female sergeant" and made other complaints but no one took action. Though the defendants are unknown at this stage, this is enough to state a claim against them.

Finally, Willison complains about being subjected to repeated strip and pat down searches. "In the context of bodily searches performed upon those incarcerated in our prison system, only those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Prison officials are certainly permitted to touch, pat down and search a prisoner in order to determine whether

6

the prisoner is hiding anything dangerous on his person. *Id.* Even if a strip-search is justified, it still might violate the plaintiff's Eighth Amendment rights if it was "conducted in a harassing manner intended to humiliate and cause psychological pain." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009); *see also Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Willison alleges he (and the other inmates) were subjected to strip searches before every shower and before every trip to the bathroom and patted down after every shower and bathroom trip. At this stage, I will allow the claim to proceed. He does not, however, say who performed those strip searches. But he does sue the warden, Michael Meisner, who issued the memo which he alleges contains the search directives. I can infer, therefore, that the searches were done at Meisner's direction, and this is enough to establish he was personally involved in the alleged deprivation. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). Therefore, Willison may proceed against Meisner on his strip search claim.

Willison also lists Eric Barber, the deputy warden, as a defendant. However, he has not explained how Barber was involved in any of this (unlike Warden Meisner, who issued the memo). Because a defendant must be personally involved in alleged deprivation to be liable under § 1983, *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009), I will dismiss him from the lawsuit. And for ease of administration, I will also substitute all the current Doe placeholders for two: John Does 1–5 for Willison's bathroom-related conditions of confinement claim and John Does 6–10 for his heat-related conditions of confinement claim. Once the known defendant answers the complaint, I will issue a scheduling order so that the parties can engage in discovery. At that time, Willison will be able to ask for information to help him learn the unknown defendants' names.

3. *Motions Related to Screening*

Finally, I note that Willison filed a motion asking me to screen his complaint. This order renders that motion moot, and I will deny it as such. Willison also filed a motion to dismiss his case and have the filing fee refunded. Since then, he sent letters asking me to screen his complaint. Given those letters, I understand he wants me to disregard that motion, so I will also deny it as moot.

**NOW, THEREFORE, IT IS ORDERED** that Willison's motion to proceed without prepayment of the filing fee (Docket # 4) is **DENIED as moot** based on his payment of the full filing fee.

**IT IS ALSO ORDERED** that Willison's motion to request screening (Docket # 12) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Willison's motion to dismiss his complaint and refund his filing fee (Docket # 14) is **DENIED as moot**.

**IT IS ALSO ORDERED** that Eric Barber is **DISMISSED**.

The Clerk of Courts office is directed to substitute the Doe placeholders with John Does 1–5 and John Does 6–10.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendant Michael Meisner.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendant shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Willison is further advised that failure to make a timely submission may result in the dismissal of this case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 7th day of December, 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.